**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

_____

No. 98-50212
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOSE TRINIDAD DIAZ-DE LA O,

Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Texas
(EP-97-CR-623-DB-ALL)

February 4, 1999

Before JONES, SMITH, and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:[*]

Jose Trinidad Diaz-De La O ("Diaz") appeals his conviction and sentence for attempted illegal reentry into the United States, in violation of 8 U.S.C. § 1326. We affirm.

I

Customs Inspectors pulled Diaz out of a line of people waiting to approach the turnstiles at the Paso Del Norte Port of Entry on the Mexico-United States border. They seized him after a narcotics-detecting dog alerted to him. At the time he was seized, Diaz had not applied to enter the United States, nor had he entered the primary inspection area. Inspectors searched Diaz, and although they found no narcotics, a record check revealed that Diaz had previously been deported from the United States. Diaz was charged with illegal reentry and attempted illegal reentry in violation of 8 U.S.C. § 1326. A jury found Diaz guilty of attempted illegal reentry, but acquitted him

_____

[*] Pursuant to Fifth Circuit Rule 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Fifth Circuit Rule 47.5.4.

of illegal reentry. The district court sentenced Diaz to ninety-two months of imprisonment and three years of supervised release.

Diaz appeals on two grounds. First, he argues that the district court erred in refusing to give his proposed jury instruction on attempt. Second, he contends that the district court misapplied the Sentencing Guidelines in denying Diaz a downward adjustment for acceptance of responsibility.

II

It is a crime for an alien who has been deported from the United States to "enter[] or attempt to enter . . . the United States" without proper approval. 8 U.S.C. § 1326. To be guilty of any attempt crime, a defendant must have (1) "'act[ed] with the kind of culpability otherwise required for the commission of the crime,'" and (2) "'engaged in conduct which constitutes a substantial step toward commission of the crime,' *i.e.*, conduct 'strongly corroborative of the firmness of the defendant's criminal intent.'" *United States v. Stone*, 960 F.2d 426, 433 (5th Cir. 1992) (quoting *United States v. Mandujano*, 499 F.2d 370, 376 (5th Cir. 1974)). The district court instructed the jury that to find Diaz guilty of attempted illegal reentry, the jury must find:

> *First*: that the defendant intended to enter the United States without the permission of the Attorney General, after being arrested and deported at some earlier time; and *Second*: that the defendant did an act constituting a substantial step towards the commission of that crime which strongly corroborates the defendant's criminal intent.

Diaz asked the court to add the following instruction: "*Third*: That the substantial step or steps taken by the Defendant must be unique rather than so commonplace that they are engaged in by persons not in violation of the law." His proposed instruction mimicked our decision in *United States v. Oviedo*, in which we held:

> [I]n order for a defendant to be guilty of a criminal attempt, the objective acts performed, without any reliance on the accompanying *mens rea*, mark the defendant's conduct as criminal in nature. The acts should be *unique rather than so commonplace that they are engaged in by persons not in violation of the law.*

*United States v. Oviedo*, 525 F.2d 881, 885 (5th Cir. 1976) (emphasis added).

We review a district court's refusal to give a requested jury instruction for abuse of discretion. *See United States v. Sellers*, 926 F.2d 410, 414 (5th Cir. 1991). Typically, a trial court's refusal to

include a requested instruction is reversible "only if the requested instruction is substantially correct, the actual charge given the jury did not substantially cover the content of the proposed instruction, and the omission of the proposed instruction would seriously impair the defendant's ability to present a defense." *United States v. Pettigrew*, 77 F.3d 1500, 1510 (5th Cir. 1996). Diaz argues that the omission of his requested instruction improperly hampered his defense. He contends that standing in line at a port of entry is a commonplace activity, and that under *Oviedo*, such behavior alone cannot form the basis of an attempt conviction. Without his requested instruction, Diaz submits, the jury was unable to consider that aspect of his defense.

We find that the district court did not abuse its discretion, because the district court's jury charge "substantially cover[ed]" Diaz's proposed instruction. *Pettigrew*, 77 F.3d at 1510. Specifically, the content of Diaz's requested instruction was adequately covered by the district court's charge that a defendant must take "a substantial step towards commission of that crime which strongly corroborates his criminal intent." Diaz is correct that under *Oviedo*, a defendant's acts must be "unique rather than so commonplace that they are engaged in by persons not in violation of the law." *Oviedo*, 525 F.2d at 885. This begs the question, however, of precisely what distinguishes acts that are "unique" from those that are "commonplace." *Oviedo* answered this query by reaffirming the well-established principle that "the objective conduct of the defendant must strongly corroborate the firmness of the defendant's criminal intent." *Id.* at 886 (citing *Mandujano*, 499 F.2d at 376). In an opinion decided shortly after *Oviedo*, we acknowledged that "[w]hat the court did in *Oviedo* was to require that the objective acts of the defendant, taken as a whole, strongly corroborate the required culpability." *United States v. Korn*, 557 F.2d 1089, 1091 (5th Cir. 1977). Thus what separates acts that are unique and therefore criminal in nature, from acts that are so commonplace that they are engaged in by persons not in violation of the law, is whether those acts, taken as a whole, strongly corroborate the required culpability.

Our reasoning in *United States v. Woolery*, 735 F.2d 818 (5th Cir. 1984), bolsters this conclusion. There, we wrote:

> The goal in *Oviedo* is that objective acts of the defendant without regard to *mens rea* "mark the defendant's conduct as criminal in nature. The acts should be unique rather than so commonplace that they are engaged in by persons not in violation of the law." Only then may an attempt conviction stand.

*Woolery*, 735 F.2d at 822 (quoting *Oviedo*, 525 F.2d at 885) (citations omitted). Applying this test, we upheld the attempt conviction in *Woolery*, because the defendant's actions "constitut[ed] precisely the type of 'objective acts' which mark [his] conduct as criminal in nature, and evidence 'commitment to the criminal venture and corroborate the *mens rea*.'" *Woolery*, 735 F.2d at 823 (quoting *Oviedo*, 525 F.2d at 885). Thus, *Woolery* equates *Oviedo*'s "unique rather than . . . commonplace" test with the well-established requirement that a defendant's acts strongly corroborate a defendant's criminal intent.

For these reasons, we conclude that the district court's jury charge, which required the government to prove "that the defendant did an act constituting a substantial step towards the commission of that crime which strongly corroborates the defendant's criminal intent," substantially covered Diaz's requested instruction. Consequently, the district court did not abuse its discretion in refusing to include Diaz's requested instruction on attempt.

## III

Diaz also argues that the district court misapplied the Sentencing Guidelines in denying Diaz's request for a downward adjustment for acceptance of responsibility. The district court denied Diaz a downward departure for acceptance of responsibility because he "put the government through a trial." Diaz contends that the district court erred in reading the Guidelines to preclude a finding of acceptance of responsibility solely because he went to trial. We review the district court's application of the Sentencing Guidelines *de novo*. *See United States v. Gross*, 26 F.3d 552, 554 (5th Cir. 1994).

The Sentencing Guidelines authorize the district court to decrease the offense level by two if "the defendant clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1. "This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." U.S.S.G. § 3E1.1, comment. (n.2). Nonetheless, as explained

-4-

in the commentary to the Guidelines:

> In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (*e.g.*, to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct).

*Id.*

Diaz argues that his is the "rare situation[]" in which a defendant may demonstrate an acceptance of responsibility even though he or she proceeds to trial. *Id.* He contends that he did not deny any factual elements of his guilt. According to Diaz, his sole defense at trial was a legal argument that he could not be guilty of an attempt to illegally enter the United States where he never advanced to the primary inspection area, never applied for admission, and never proceeded past the turnstile at the port of entry. Thus he claims to have asserted a purely legal defense, one which merely "challenge[d] . . . the applicability of the statute to his conduct." U.S.S.G. § 3E1.1, comment. (n.2).

This characterization, however, defies the actual events at trial. Diaz did contest "essential factual elements of guilt." U.S.S.G. § 3E1.1, comment. (n.2). Specifically, Diaz contested whether he intended to enter the United States.[1] Diaz's attorney argued to the jury that Diaz may have been standing in line merely to ask border officials a question, not to procure illegal admission into the United States. He then asserted that if any juror thought it possible that Diaz intended to do something other than to gain illegal entry into the United States, then he or she would have a reasonable doubt and could not find that Diaz had criminal intent.[2]

---

[1] To be guilty of an attempt, a defendant must have "intended to commit the underlying offense." *United States v. Thompson*, 130 F.3d 676, 688 (5th Cir. 1997), *cert. denied*, ___ U.S. ___, 118 S. Ct. 2307, 141 L. Ed. 2d 166 (1998).

[2] At closing argument, Diaz's attorney argued:
> Is it possible my client was going to go up and ask a question? You bet it's possible. Okay. We'll never know, because they pulled him out of line. Okay. But it's certainly possible he could have been going up to ask for a question. . . . If you think that it's a possibility that he could have gone up and asked for permission, or asked a question and not applied for admission, ladies and gentlemen, that's a reasonable doubt. If it causes you to pause, if it causes you to think, "Well, maybe that's what

By contesting whether he intended to enter the United States illegally, Diaz disputed an "essential factual element[] of guilt." *Id.* He did more than merely "challenge . . . the applicability of the statute to his conduct."[3] *Id.* Therefore, this case does not present one of the "rare situations" where a defendant who puts the government through a trial might nonetheless demonstrate an acceptance of responsibility. *Id.* The district court did not err in reading U.S.S.G. § 3E1.1 to preclude a downward departure because Diaz went to trial.

## IV

Accordingly, we affirm Diaz's conviction and sentence.

---

he was doing," that's a reasonable doubt. And that's enough to find there wasn't intention here.

[3] To be sure, it would have been possible for Diaz to present a purely legal defense at trial. He could have conceded that he intended to enter the United States, and argued solely that his conduct did not constitute a "'substantial step toward commission of the crime.'" *United States v. Stone*, 960 F.2d 426, 433 (5th Cir. 1992) (quoting *United States v. Mandujano*, 499 F.2d 370, 376 (5th Cir. 1974)). Such a defense would not have denied "essential factual elements of guilt," and thus might not have precluded a finding of acceptance of responsibility. U.S.S.G. § 3E1.1, comment. (n.2). As discussed above, however, Diaz did contest whether he intended to enter the United States. In fact, when arguing to the jury that Diaz may have lacked criminal intent, Diaz's attorney noted that this was a separate argument from Diaz's claim that he did not take a substantial step towards committing the offense. He argued:

[L]et's say that some of you may find that he did have the intent. Some of you—let's say that some of you are convinced beyond a reasonable doubt, okay, that he did have the intent to enter. Okay. If you're convinced of that, okay, you have to ask yourselves, "Did he act out on it? Did he do—did he take enough of a significant step?"